FILED

2016 Feb-29  PM 12:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **KATHY SUMMERLIN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:15-cv-00039-RDP** |
| | } | |
| **SHELLPOINT MORTGAGE SERVICES,** | } | |
| **et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

### I.        Introduction

The court has before it Defendant Shellpoint Mortgage Services's Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 14), filed April 24, 2015.  Shellpoint filed a Brief in Support of its Motion to Dismiss (Doc. # 15).  Plaintiff[1] had the opportunity to file a responsive brief but did not do so.  Therefore, Shellpoint's Motion is ripe for review.  For the reasons outlined below, the court finds that the Motion is due to be granted and this case is due to be dismissed with prejudice.

### II.       Facts and Procedural History

Plaintiff brought this case *pro se* to stop foreclosure of her home in Jefferson County, Alabama, and alleged violations of the Real Estate Settlement Practices Act ("RESPA") and the Fair Debt Collection Practices Act ("FDCPA") relating to a notice of service transfer, violations

---

[1] Plaintiffs Tommy and Kathy Summerlin initially brought this case.  (Doc. # 1-2).  The court dismissed Plaintiff Tommy Summerlin from this case with its June 15, 2015 Order upon notice of his death.  (Doc. # 18).  Kathy Summerlin is now the sole Plaintiff.

of the FDCPA concerning a pre-foreclosure notice, and fraud upon origination of her mortgage loan, among other things.  The court discerns the following allegations supporting those claims from Plaintiff's Amended Complaint and the many, non-enumerated exhibits attached to the Amended Complaint.[2]

On May 6, 2008, Plaintiff received a loan from Empire Equity Group Inc. d/b/a 1st Metropolitan Mortgage, which was secured by a mortgage and promissory note (the "Note"). (Doc. # 13).  The agent and payee on the Note was Taylor, Bean & Whitaker Mortgage Corp. ("TB&W").  (*Id.*).  The Note was supported by a Direct Endorsement Approval for a HUD/FHA-Insured Mortgage.  (*Id.*).  With an Assignment of Mortgage dated May 6, 2008 (the "Assignment"), from Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as the nominee for TB&W to BAC Home Loans Servicing, LP ("BAC"), MERS transferred and assigned to BAC, "its successors, transferees, and assigns forever, all right, title and interest of [MERS] in and to" Plaintiff's mortgage.  (*Id.*).  Sirote & Permutt, P.C., was the vendor for the Assignment.  (*Id.*).

Bank of America, N.A., thereafter became the successor by merger to BAC, and, utilizing the law firm of McFadden, Lyon & Rouse, L.L.C. ("McFadden"), instituted foreclosure actions in September 2012.  (Doc. # 13).  Plaintiff sent McFadden letters disputing Bank of America's ownership of the debt and declaring the debt "null and void."  (*Id.*).  McFadden sent Plaintiff a

---

[2] The Eleventh Circuit directs a court generally to "not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6).  *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citation omitted).  There is "an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."  *Id.* (citation omitted).  A document is "undisputed" when its authenticity is not challenged.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  In this case, Plaintiff refers to many of the documents, both expressly and impliedly, in her Amended Complaint.  (*See* Doc. # 13).  Likewise, Plaintiff alleges that Defendant produced no transfer service notices, but Defendant attaches such a notice to its Motion.  (*See id.*; Doc. # 15-1).  No party has disputed the authenticity of any of these documents.  Accordingly, this court will consider those exhibits which are central to the dispute and relevant to the resolution of the Motion.

letter on February 4, 2013, stating that alternatives to foreclosure exist, but otherwise the foreclosure sale is scheduled for March 18, 2013.  (*Id.*).  Plaintiff does not state what occurred next.  However, effective August 1, 2013, Bank of America placed Plaintiff's account with Resurgent Mortgage Servicing ("Resurgent") for mortgage servicing. (*Id.*).

On October 30, 2013, Resurgent sent Plaintiff a letter stating that it had not received any payments since it began servicing the loan, and that the loan had been past due since January 1, 2009.  (Doc. # 13).  Resurgent stated in that letter it had placed a restriction on Plaintiff's account preventing further contact with Plaintiff due to correspondence from her requesting a "cease and desist."  (*Id.*).  However, Resurgent stated that if it received no further information from Plaintiff within thirty days of the date of the letter's receipt, it "will assume this dispute is resolved."  (*Id.*).  It does not appear Plaintiff sent any more information to Resurgent during that time period.

Subsequently, effective March 1, 2014, Resurgent became part of Shellpoint Mortgage Servicing ("Defendant" or "Shellpoint").  (Docs. # 13, 15-1).  On November 11, 2014, Defendant Elizabeth Loefgren of Sirote & Permutt, on behalf of Shellpoint, sent Plaintiff a foreclosure notice setting forth the total amount owed on the debt but also providing contact information for Plaintiff to discuss alternatives to foreclosure.  (Doc. # 13).  It appears from Ms. Loefgren's December 12, 2014 letter that she received from Plaintiff a letter on December 8, 2014.[3]  (*Id.*).  Ms. Loefgren responded to Plaintiff in a letter dated December 12, 2014, stating that she forwarded Plaintiff's letter to Shellpoint for review and a response.  (*Id.*).

On December 17, 2014, Plaintiff filed her Complaint in the Circuit Court of Jefferson County, Alabama.  (Doc. # 1-2).  Defendant removed the case to this court in January 2015.

---

[3] The contents of this December 8, 2014 letter are not stated and that letter is not attached to the Amended Complaint.

(Doc. # 1).  Pursuant to the court's March 19, 2015 Order (Doc # 12), which directed Plaintiff to amend her Complaint to comply with the Federal Rules of Civil Procedure (among other things),[4] Plaintiff filed an Amended Complaint against Defendants Loefgren and Shellpoint on April 10, 2015.[5]  (Doc. # 13).

Defendant timely responded by filing a Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. # 14).  In its brief, Defendant argues that Plaintiff's claims are confusing and do not meet pleading standards ordered by this court and required under the Federal Rules of Civil Procedure.  (Doc. # 15).  Defendant contends the Amended Complaint simply repeats the four causes of action in the original Complaint (the court reads the pleadings as including more claims than that), and advances certain arguments as to why all of Plaintiff's claims "lack merit" and should be dismissed with prejudice.  (*See id.*).  Further, Defendant asserts Plaintiff's claims misconstrue the law or misstate the facts, and thus fail to state a claim for relief, and that some claims are barred by the statute of limitations.  (*Id.*).  Defendant includes as exhibits a Notice of Transfer of Servicing dated February 14, 2015, and the initial Complaint.[6]  (Docs. # 15-1, 15-2).

---

[4] Specifically, the court ordered Plaintiff to amend the Complaint to state a claim upon which relief can be granted.  (Doc. # 12).  The original Complaint consisted solely of an unmarked, handwritten document that did not provide any factual or legal basis for the requested relief, and with several pages of unreferenced correspondence attached.  (*See* Doc. # 1-2).  The court further ordered that the amended complaint comply with Federal Rules of Civil Procedure 8(a), 8(d)(1), 10(b), and 11(b), and that each count contain no more than one discrete claim for relief.  (Doc. # 12).  Also, the court instructed Plaintiff to set forth factual allegations supporting each discrete claim. (*Id.*).  The court stated, "Plaintiff must set forth each claim she is making against Defendants separately, in a short, plain statement, containing allegations of fact and referencing the statute or law under which each separate claim is brought and the relief sought under each separate claim."  (*Id.*).  The Amended Complaint does not comply with the court's Order.

[5] According to the Report of Parties' Planning Meeting, filed May 26, 2015, Ms. Loefgren "has not been served with the Complaint."  (Doc. # 16); (*see also* Doc. # 1) ("Ms. Loefgren has not been served.").  More than 120 days have passed since Plaintiff filed the Amended Complaint (on April 10, 2015).  *See* Fed. R. Civ. P. 4(m). Therefore, the claims against Ms. Loefgren are due to be dismissed without prejudice.

[6] *See* note 2, *supra*.

### III.    The Amended Complaint

The Amended Complaint is a shotgun pleading.  It is jumbled and difficult to follow.  Its style is further in violation of the court's directives in its March 19, 2015 Order instructing Plaintiff to amended her pleadings.  (Doc. # 12).  The court would be entitled to dismiss the Complaint on these grounds alone.  Nevertheless, the court will also address the other reasons why Plaintiff's Amended Complaint is due to be dismissed.  Construing Plaintiff's Amended Complaint liberally, the court reads it as setting forth four "sections" presenting seven causes of action.[7]  (*See* Doc. # 13).

Plaintiff alleges in section one that Shellpoint lacks legal capacity to foreclose on a property in Alabama for the following reasons.  (Doc. # 13).  On November 11, 2014, Ms. Loefgren commenced foreclosure actions (*i.e.*, preparing, signing, and sending a Notice of Acceleration of a Promissory Note and Mortgage to Plaintiff (the "Notice")) on Plaintiff's home on behalf of Shellpoint.  (*Id.*).  Plaintiff avers that Shellpoint (1) is neither a resident of, nor licensed to conduct business in Alabama, and (2) has not obtained a non-residential bond prior to or following the sending of the Notice.  (*Id.*).  Thus, Plaintiff contends Shellpoint has no standing to foreclose on Plaintiff's home.

Section two sets forth a claim under the FDCPA related to the Notice.[8]  (Doc. # 13). Plaintiff asserts Defendant has no legal entitlement to Plaintiff's house, and thus violated the FDCPA by purportedly threating nonjudicial foreclosure and collection of the mortgage debt. (*Id.*).  Plaintiff also appears to aver that the Notice does not follow FDCPA debt collector notice

---

[7] Defendant construes the Amended Complaint to allege four causes of action, but in this court's liberal construction of the Amended Complaint—which is appropriate when a plaintiff brings a case *pro se*—there are seven claims.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[8] It appears Plaintiff's averments supporting this claim are also based upon allegations made in the first section of the Amended Complaint.

requirements, and that Defendant did not give Plaintiff an opportunity to dispute the debt. (*See id.*). (Note: The allegations appearing in a later section of the Amended Complaint, contending that "in September 2013" Plaintiff disputed the debt and declared it "null and void," seemingly contradict the FDCPA claim regarding the Notice. (*Id.*)).

Section three is a single paragraph requesting relief for separate violations of the FDCPA and RESPA. (Doc. # 13). Plaintiff alleges that Shellpoint failed to provide a service transfer notice in violation of RESPA, and, paradoxically, any notices that were given did not comply with the FDCPA. (*Id.*). Specifically, Plaintiff avers that, prior to receiving a December 22, 2014 notice of sale, the only communications "or knowledge" she had regarding Shellpoint "was received in a Notice of Force-placed insurance from the Insurance Dept. on June 7/11/2014 [sic]," and a similar one received August 20, 2014. (*Id.*). "The notice stated, Shellpoint Mortgage Services was the mortgagee and lienholder on the mortgage in question." (*Id.*). Further, Plaintiff contends that she had received no communications from Shellpoint or Resurgent as required by RESPA or the FDCPA prior to or following August 2014 regarding a merger or name change. (*Id.*). In contradiction of certain of her other allegations, Plaintiff notes that "[n]o attempts or efforts were made by Shellpoint related to collection of a debt, either by mail or phone." (*Id.*).

Finally, section four references Alabama state law claims of fraud, malice, and wantonness, and requests punitive damages. (Doc. # 13). As grounds for these claims, Plaintiff asserts she sent to Resurgent in September 2013 a dispute of the mortgage debt, declaring the debt "null and void." (*Id.*). Plaintiff indicates she alleged in the dispute the mortgage and Note were counterfeit because, in summary: (1) the mortgage originator was not licensed to originate mortgages in Alabama, and the origination "lacked lawful consideration;" (2) the mortgage was

directly endorsed to the lender and payee TB&W; the Note is "non-negotiable;" (3) TB&W did not assign or transfer the Note; (4) the "payee" did not sign the Note; and (5) the mortgage and the "titile" were not perfected and were void from the time of origin.  (*Id.*).  Accordingly, Plaintiff asserts that Shellpoint and its predecessors cannot collect an invalid debt, become holders-in-due-course, or foreclose the mortgage; all assignments, transfers, and sales of the mortgage were invalid and unsecured; and all threats of foreclosure were unlawful and caused Plaintiff emotional harm and suffering.  (*Id.*).  Plaintiff concludes by claiming, "As this fraud occurred in May 2008, plaintiff has suffered far to [sic] much emotional pain, mental suffering and worry and can no longer tolerate anymore [sic] abuse."  (*Id.*).

## IV.    Standard of Review

The Federal Rules of Civil Procedure require that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Accordingly, the complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party.  *Watts v. Fla. Intl. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  The court draws all "reasonable inferences" in favor of the plaintiff.  *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

The Supreme Court has identified "two working principles" for a district court to use in applying the facial plausibility standard. First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as [] factual allegation[s]." *Iqbal*, 556 U.S. at 678. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. Application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id*. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id*.

## V.   *Pro Se* **Pleadings**

When, as here, a plaintiff proceeds *pro se*, the complaint is to be "liberally construed," and the "complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Harney v. McCatur, Inc.*, No. 11-cv-4103, 2012 WL 2479630, at *2 (N.D. Ala. June 26, 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, a *pro se* litigant is not given *carte blanche* in crafting a pleading; a "*pro se* plaintiff's complaint must meet the minimum requirements of presenting a viable claim." *Id.* (quoting *Hales v. City of Montgomery*, 347 F. Supp. 2d 1167, 1171 (M.D. Ala. 2004)); *see also GJR Invs. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("[T]his leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."). In other words, "[o]nce a *pro se* litigant is in court, [s]he is subject to the relevant laws and rules of court, including the Federal Rules of Civil Procedure." *Smith v. Fla. Dept. of Corr.*, 369 Fed. Appx. 36, 38 (11th Cir. 2010) (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)). Thus, while the court liberally construes Plaintiff's pleadings and "affords them significant leniency in light of her *pro se* status, the court may not wholly disregard the federal pleading standards and standard of review." *Roberts v. Chase Home Fin.*, No. 12-cv-1883, 2012 WL 2862033, at *1 (N.D. Ala. Jul. 22, 2012) (citing *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990)).

Further, a *pro se* plaintiff "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Carter v. HSBC Mortg. Services, Inc.*, No. 14-11898, 2015 WL 4125602, at *3 (11th Cir. July 9, 2015) (unpublished opinion) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*)). Consistent

with that legal principle, the court offered Plaintiff an opportunity to amend her complaint. (Doc. # 12).  Although Plaintiff purported to take advantage of this opportunity, she nevertheless failed to comply with the Federal Rules of Civil Procedure and this court's orders in doing so. (*See id.*; Doc. # 13).  Thus, while the court could dismiss Plaintiff's claims on that basis, it concludes below that the Amended Complaint is due to be dismissed for other reasons.

## VI.     Argument

Plaintiff has alleged seven claims.  After careful consideration, the court concludes they are all due to be dismissed.  Plaintiff's claims are addressed below.

### A.     Defendant has standing to foreclose in Alabama

Plaintiff contends that Defendant "is not a resident or licensed to conduct business in Alabama," is not entitled to collect the "invalid" mortgage debt, become a holder-in-due-course, or enforce the mortgage in a foreclosure, and avers that the Note is non-negotiable.  (Doc. # 13). Those allegations are conclusory and fail as a matter of law.

"In Alabama, a note secured by a mortgage is a negotiable instrument," and is subject to Alabama's version of the Uniform Commercial Code.  *Sturdivant v. BAC Home Loan Servicing, LP*, 159 So.3d 47, 55 (Ala. Civ. App. 2013) (citing *Thomas v. Wells Fargo Bank, N.A.*, 116 So.3d 226, 233 (Ala. Civ. App. 2012)).  The Note in this case is secured by a mortgage on Plaintiff's property.  (*See* Doc. # 13).  Accordingly, Plaintiff's averment that the Note is non-negotiable is simply off the mark.[9]

_____

[9] Even if the Note were non-negotiable, the Alabama Code provides that "[t]he transfer of a . . . note given for the purchase money of lands, whether the transfer be by delivery merely or in writing, expressed to be with or without recourse on the transferor, passes to the transferee the lien of the vendor of the lands."  Ala. Code § 8-5-24. Thus, a non-negotiable note "given for the purchase money of lands" may be transferred, which would allow the transferee the right to enforce the terms of that note.  *Id.*  Accordingly, Defendant would still have the right to foreclose on the Note even if it were non-negotiable.

Alabama's Uniform Commercial Code defines a "[p]erson entitled to enforce" a negotiable instrument as "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 7-3-309 or 7-3-418(d)." *Thomas*, 116 So.3d at 233 (citing Ala. Code. § 7-3-301). A "holder" is "a person in possession if the instrument is payable to bearer." *Id.* (citing Ala. Code § 7-1-201(21)). If a note has been indorsed in blank, it "becomes payable to 'bearer' and may be negotiated by transfer of possession alone . . . ." *Id.* (citing Ala. Code § 7-3-205(b)). "Possession of a note payable to order and indorsed in blank is prima facie evidence of ownership. *Id.* (citing *Berney v. Steiner*, 19 So. 806, 807 (Ala. 1896)); *see also Perry v. Fed. Natl. Mortg. Assn.*, 100 So.3d 1090, 1095 (Ala. Civ. App. 2012) ("A blank indorsement allows a party to transfer a note merely by possession.") (citing Ala. Code §§ 7-3-201(b), 7-3-205(b)).

Plaintiff alleges that the "mortgage was directly endorsed to [TB&W]." (Doc. # 13). The court reads this statement as averring the Note was either not endorsed in blank, not transferable, or to make both assertions. However, in her Amended Complaint, Plaintiff avers that TB&W was the lender and payee, the Note was endorsed to TB&W, and the "payee" did not sign the Note.[10] (*Id.*). In any event, Plaintiff's averments suggest the Note was endorsed in blank.[11] (*See id.*); *see also Graveling v. BankUnited N.A.*, 970 F. Supp. 2d 1243, 1253-54 (N.D. Ala. 2013); Ala. Code § 7-3-205(b).

---

[10] Plaintiff did not attach to her Amended Complaint the third of three pages of the Note, which is presumably the absent signature page. (*See* Doc. # 13). The Note is a "Multistate FHA Fixed Rate Note." A standard example of such a note is available from FannieMae at https://www.fanniemae.com/singlefamily/notes. The third page on the standard note is the signature page. Nevertheless, Plaintiff did attach a Direct Endorsement Approval for a HUD/FHA-Insured Mortgage that TB&W did not sign. (Doc. # 13).

[11] Plaintiff also expressly stated in the initial Complaint that the note was indorsed in blank. (Doc. # 1-2). While Defendant points out this admission in its Motion to Dismiss, the court need not consider whether Plaintiff is judicially estopped from denying it because Plaintiff makes a similar, albeit slightly less direct admission in her Amended Complaint. (Docs. # 13, 15); *cf. Ward v. AMS Serv., LLC*, 606 Fed. Appx. 506, 508-510 (11th Cir. 2015).

Plaintiff attached to the Amended Complaint a copy of the Note and a copy of the Assignment.  (Doc. # 13).  In the Assignment, MERS, acting as the nominee for TB&W (the agent for the lender), assigned or transferred to BAC and "its successors, transferees, and assigns forever, all right, title and interest of [MERS] in and to" Plaintiff's mortgage, "together with the note and indebtedness secured by the Mortgage."  (*Id.*).  The court recognizes that the MERS system "operates as follows:"

> When a home is purchased, the lender obtains from the borrower a promissory note and a mortgage instrument naming MERS as the mortgagee (as nominee for the lender and its successors and assigns).  In the mortgage, the borrower assigns his right, title, and interest in the property to MERS, and the mortgage instrument is then recorded in the local land records with MERS as the named mortgagee. When the promissory note is sold (and possibly re-sold) in the secondary mortgage market, the MERS database tracks that transfer.  As long as the parties involved in the sale are MERS members, MERS remains the mortgagee of record (thereby avoiding recording and other transfer fees that are otherwise associated with the sale) and continues to act as an agent for the new owner of the promissory note.

*In re: Mortg. Elec. Registration Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1370 n. 6 (J.P.M.L. 2009).  "Through this system, MERS attempts to separate the promissory note evidencing the debt from the mortgage that is collateral or security for the note.  According to MERS, the lender takes possession of and holds the note, which may be subsequently assigned multiple times through multiple note owners."  *Fuller v. Mortg. Elec. Registration Sys., Inc.*, 888 F. Supp. 2d 1257, 1265-66 (M.D. Fla. 2012) (internal quotations and citations omitted).  Thus, the court reasonably infers that the Assignment indicates that the Note was endorsed in blank, and consequently is (currently) owned by Defendant.[12]  *See Iqbal*, 556 U.S. at 678.  Plaintiff has pleaded no facts to indicate otherwise.  (*See* Doc. # 13).

---

[12]  Additionally, the Assignment directly contradicts Plaintiff's conclusory allegations that "[n]o assignment, sale or transfer was issued to another party by [TW&B]," and "[a]ll assignments, transfers and sales of said mortgage are invalid and not secured by real property."  (Doc. # 13).

Under Alabama Code § 35-10-12,[13] "any person or entity who, before initiating foreclosure proceedings, becomes a *holder* of a promissory note secured by a mortgage and thereby is entitled to the payment of the mortgage debt may validly foreclose upon a borrower's default."[14] *Sturdivant*, 159 So.3d at 55 (citing *Perry*, 100 So.3d at 1094, Ala. Code § 35-10-12) (emphasis in original).  In other words, "[a] holder of a note secured by a mortgage is entitled to enforce the terms of the note." *Id.* (citing *Perry*, 100 So.3d at 1094).  The holder of a mortgage in Alabama is not required to be qualified to do business in Alabama in order to enforce the mortgage. *See Midwest Homes Acceptance Corp. v. Langdon*, 253 So.2d 29, 30-31 (Ala. 1971) (holding that Alabama law "permit[s] foreign corporations to lend money to residents of Alabama and to take security for such loans in the form of mortgages on real property located within the state, and to enforce such obligations in the courts of Alabama").  Therefore, Defendant may foreclose on Plaintiff's property regardless of whether it is licensed to do business in Alabama.

Furthermore, Alabama's "[S]upreme [C]ourt held that '[i]t is not at all necessary that a mortgage deed be assigned in order to enable the owner of the debt to foreclose under a power of

---

[13] Section 35-10-12 provides:

Where a power to sell lands is given in any mortgage, the power is part of the security and may be executed by any person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured.  A conveyance of the lands sold under such power of sale to the purchaser at the sale may be executed by the mortgagee, their agents, attorneys or any person making the sale.  Such conveyance vests the legal title of the lands sold under the power of sale to the purchaser at the sale.  Probate judges shall index foreclosure deeds by the name of the original grantor and grantee in the mortgage, deed of trust, or other conveyance intended to secure the payment of money, and also by the names of the grantor and grantee in the foreclosure deed.

Ala. Code § 35-10-12.

[14] Pursuant to Alabama law, a mortgagee has various remedies upon a mortgagor's default, including obtaining a judgment on the note secured by the mortgage, or taking separate action to foreclose the mortgage. *See Triple J. Cattle, Inc. v. Chambers*, 551 So.2d 280, 282 (Ala. 1989).  These remedies include foreclosure by power of sale of the mortgage. *See* Ala. Code §§ 35-10-11 – 35-10-16.

sale.'" *Perry*, 100 So.3d at 1095 (quoting *Harton v. Little*, 57 So. 851, 851 (Ala. 1911)). "The power of sale is a part of the security, and may be exercised by an assignee, or any person who is entitled to the mortgage debt. And a transfer of the debt, by writing or by parol, is in equity an assignment of the mortgage." *Id.* (quoting *Harton*, 57 So. at 851-52) (other citations omitted). Plaintiff avers that the Note was not assigned, sold, or transferred but does not allege any facts to support this statement, and the court disregards it. (Doc. # 13); *see Iqbal*, 556 U.S. at 678.

Of course, Defendant need not produce the Note in order to foreclose. "A foreclosure is an action on a mortgage and, as such, is not governed by the U.C.C." *Farkas v. SunTrust Mortg., Inc.*, 447 Fed. Appx. 972, 973 (11th Cir. 2011) (citing Ala. Code §§ 7-3-104(a), 35-10-11 to 35-10-14; *Triple J Cattle*, 551 So.2d at 282). "Alabama's foreclosure statute sets forth the requirements for conducting a non-judicial foreclosure under the 'power of sale' contained in the mortgage, but the statute does not provide a cause of action for a mortgagor to require the mortgagee to establish proof of claim prior to initiating the foreclosure." *Id.*; *see also Douglas v. Troy Bank & Trust Co.*, 122 So.3d 181, 184 (Ala. Civ. App. 2012) (adopting *Farkas*'s reasoning). A nonjudicial foreclosure is not invalid because a foreclosing entity, such as Defendant, has failed "to produce or present original documentation evidencing the underlying debt and security for repayment thereof." *Douglas*, 122 So.3d at 184; *see also Graveling*, 970 F. Supp. 2d at 1252-53 (referencing "the considerable case law suggesting that Alabama does *not* require production of the original instrument *in order to institute foreclosure*" (emphasis in original)). In other words, a foreclosing entity like Defendant is not required to surrender the original promissory note and mortgage to the mortgagor (or to a court) prior to instituting foreclosure under Alabama law. *See Douglas*, 122 So.3d at 182-83 (rejecting so-called "show me the note" argument). As such, Defendant does not have to present the Note to Plaintiff in

14

order to foreclose. Finally, and in any event, the court properly disregards Plaintiff's conclusory statements (which lack factual support) that the Note and mortgage were "null and void" and "fake and counterfeit."  (Doc. # 13); *Iqbal*, 556 U.S. at 678.

For these reasons, Defendant has standing to foreclose on Plaintiff's property. Accordingly, Plaintiff's claim that Defendant cannot foreclose on her property is due to be dismissed.

### B.      Plaintiff Does Not Plausibly Allege a Claim for Relief under the FDCPA for Defendant's Sending the Pre-Foreclosure Notice

Plaintiff asserts that Defendant violated the FDCPA (particularly, 15 U.S.C. §§ 1692d-1692f) by sending the Notice, which "threaten[ed] a nonjudicial foreclosure and collection of the debt by offering alternative to foreclosure by providing" certain contact information.  (Doc. # 13).  However, Plaintiff fails to state a FDCPA claim against Shellpoint relating to the Notice.[15]

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors. . . ."  15 U.S.C. § 1692(e).  The FDCPA both requires and forbids specific conduct by debt collectors.  *See, e.g.*, *id.* at §§ 1692g(a) (collector must provide thirty-day notice to dispute

---

[15] While in a different section of the Amended Complaint Plaintiff claims that a previous dispute of the mortgage debt was sent to Resurgent Capital Services in September 2013, declaring the debt "null and void," those letters do not relate to the Notice at issue and the Defendants in this case (as discussed in the below paragraph). Regardless, Plaintiff has not plausibly alleged any facts suggesting that a valid dispute existed as to the mortgage debt, or that Shellpoint violated the FDCPA.

The court notes that Plaintiff likely refers to the September 2012 and February 2013 letters attached to the Amended Complaint, including a September 17, 2012 letter to McFadden, in response to a Notice of Foreclosure Action.  (Doc. # 13).  That letter makes various rote legal claims and cites the FDCPA, while stating that the mortgage debt is disputed.  (*Id.*)  Plaintiff says she never permitted any instrument to be recorded by Bank of America or BAC, received no notices from any entities or individuals, and that the foreclosing entity at that time (Bank of America) was the mortgage servicer but not the note holder.  (*Id.*).  Plaintiff demanded proof of the debt owed to Bank of America.  (*Id.*).  Likewise, Plaintiff includes a September 18, 2012, letter to an individual attorney at McFadden, disputing and denying the debt on the same grounds.  (*Id.*).  Also, Plaintiff included a September 10, 2012 letter from McFadden, informing Plaintiff that Bank of America instructed the law firm to initiate foreclosure.  (Doc. # 13).  The letter stated (pursuant to 15 U.S.C. § 1692g) the approximate amount owed on the debt, the name of the creditor to whom the debt is owed (Bank of America), and a thirty-day notice to dispute the validity of the debt.  (*Id.*).  And, Plaintiff provided a February 4, 2013 letter from McFadden informing Plaintiff of alternatives to foreclosure, and stating that the sale is scheduled for March 18, 2013.  (*Id.*).  Neither McFadden (nor any McFadden attorneys , or Bank of America, or BAC) are named as defendants in this case.  Furthermore, it appears Resurgent properly addressed this dispute in its initial communication with Plaintiff, as discussed *infra*.  Regardless,

debt), 1692e (prohibition of use of "false, deceptive, or misleading representation or means in connection with" debt collection).  The FDCPA "does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (*per curiam*) (citations omitted); *see also Graveling*, 970 F. Supp. 2d at 1255 ("a single violation of the statute is sufficient to establish civil liability") (citations omitted).  To prevail on a FDCPA claim, Plaintiff must show, among other things, that (1) Defendant is a "debt collector" and (2) the challenged conduct is related to debt collection.  *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012).

Shellpoint is not a "debt collector" under the FDCPA.  "A debt collector is anyone whose principal business is the collection of debts or the enforcement of security instruments or any anyone who regularly collects debts owed to another." *Saint Vil v. Perimeter Mortg. Funding Corp.*, -- Fed. Appx. --, 2015 WL 6575814, at *1 (11th Cir. Oct. 30, 2015) (citing 15 U.S.C. § 1692a(6)).  If a mortgage servicer acquires the debt after the debtor has gone into default—which is what happened here—then the servicer may be a "debt collector" under the FDCPA.  *Cf. id.*; *cf. also Fenello v. Bank of America, N.A.*, 577 Fed. Appx. 899, 902 (11th Cir. 2014) (*per curiam*) (a mortgage service is not a "debt collector" when "its debt collection activities involved a debt that was not in default at the time" it became the servicer).  However, "an enforcer of a security interest, such as [a mortgage servicing company like Defendant] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)."[16] *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 460-61 (11th Cir.

---

[16] Section 1692f(6) prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if – (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." 15 U.S.C. § 1692f(6).

2009) (*per curiam*) (collecting cases); *accord Ausar-El ex el. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed. Appx. 1, 1 (11th Cir. 2011) (*per curiam*) ("an enforcer of a security interest only qualifies as a 'debt collector' for the purpose of § 1692f(6)"); *see also Dunavant v. Sirote & Permutt, P.C.*, 603 Fed. Appx. 737, 739-40 (11th Cir. 2015) (favorably discussing *Warren*'s holding).  And, Section 1692f(6) does not apply here because, as discussed above, Plaintiff has not plausibly alleged that Defendant has no present right to possession of the property.  15 U.S.C. § 1692f(6)(A).  (The other provisions of Section 1692f(6) are inapplicable).  Further, because the FDCPA "specifically says that a person in the business of enforcing security interests is a 'debt collector' for the purposes of § 1692f(6), [this express inclusion] reasonably suggests that such a person is not a debt collector for purposes of other sections of the Act."  *Warren*, 342 Fed. Appx. at 460 (citation omitted).

Moreover, and in any event, Defendant assumed the mortgage debt one year before instituting foreclosure, which reasonably suggests that Defendant's business is not primarily to collect a debt but rather to service a mortgage.  (*See* Doc. # 13).  Thus, Shellpoint is not a "debt collector."

Further, the potential foreclosure of Plaintiff's home is not a "debt collection" for purposes of the FDCPA.  *See Roberts v. Chase Home Fin.*, No. 12-1883, 2012 WL 2862033, at *2 (N.D. Ala. July 11, 2012) (citing *Warren*, 342 Fed. Appx. at 460-61).  "[I]f a person enforcing a security interest is not a debt collector, it likewise is reasonable to conclude that enforcement of a security instrument through the foreclosure process is not debt collection for purposes of the [FDCPA]."[17]  *Warren*, 342 Fed. Appx. at 460.

---

[17] To be sure, the Eleventh Circuit has "held that a law firm's communications made in the course of foreclosing on a mortgage can qualify as debt collection."  *Saint Vil*, 2015 WL 6575814, at *2 (citing *Reese*, 678 F.3d at 1217; *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012)).  But, that inquiry is based on a number of factors, namely the actions taken by the firm.  *See id.*  "[S]ending just the statutorily required notice of

But even if Shellpoint were a debt collector and the foreclosure were a debt collection, the Notice itself does not violate the FDCPA.  (*See* Doc. # 13); *see also* 15 U.S.C. §§ 1692c, 1692e-1692g.   Additionally, whether the Defendant's actions amount to "debt collection" depends on a number of factors, but Plaintiff has not plausibly pleaded any facts suggesting that any such factors exist here.  *See Saint Vil*, 2015 WL 6575814, at * 2 (discussing factors); (*see also* Doc. # 13).  "[S]ending just the statutorily required notice of foreclosure is not enough" to be considered debt collection.  *Saint Vil*, 2015 WL 6575814, at * 2.  Accordingly, the Notice does not violate the FDCPA, and Plaintiff's claims under it are due to be dismissed.

### C.   Plaintiff Does Not Have Viable Claims under RESPA and FDCPA Due to Defendant's Alleged Failure to Send Notice of a Service Transfer

Plaintiff alleges Defendant violated RESPA and the FDCPA by failing to provide "communications . . . prior to or following that time [the Notice of Force-placed insurance from the Alabama 'Insurance Dept. on June 7/11/2014'] regarding a merger or name change."  (Doc. # 13).  But Plaintiff fails to plausibly plead supporting facts and legally does not state viable claims for relief.  (*See id.*).

### 1.   Plaintiff's RESPA Claim Is Implausible and Fails as a Matter of Law

RESPA, among other things, requires mortgage servicers of federally related mortgages to notify the borrower in writing of any assignment, sale, or transfer of service to them not more than fifteen days after the effective date of transfer.   12 U.S.C. §§ 2605(c)(1), (c)(2)(A).  Similarly, transferors of servicing must notify the borrower not more than fifteen days before the effective date of the servicing transfer.  *Id.* at §§ 2605(b)(1), (b)(2)(A).   RESPA regulations provide that the transferor and transferee may provide a single notice not less than 15 days before

---

foreclosure was not enough."  *Id.*  In this case, Plaintiff has not alleged any facts that Defendant Loefgren (or Sirote & Permutt) did anything more than send the Notice and exercise their lawful right to foreclose on Plaintiff's mortgage.  (*See* Doc. # 13).  Even so, as already noted, Plaintiff did not timely serve Ms. Loefgren, and the claims against her are due to be dismissed for that reason, also.

the effective date of the servicing transfer.  12 C.F.R. § 1024.33(b)(3).  The regulations also allow an exception to the notice of transfer of service if there is no change in the payee, address to which payment must be delivered, account number, or amount of payment due and the transfer is between affiliates or as a result of a merger or acquisition.  *Id.* at § 1024.33(b)(2).

The service transfer from Resurgent to Shellpoint may fall into the RESPA regulation's exceptions, but Defendant does not proffer any argument on to that point.[18]   (*See* Doc. # 15).  Defendant sent Plaintiff a combined notice of service transfer on February 14, 2014, more than fifteen days prior to the transfer's effective date (and which otherwise complies with RESPA's notice requirements).  (Docs. # 15, 15-1); *see also* 12 U.S.C. §§ 2605(b)(3).  The provision, not the receipt, of notice is all that RESPA mandates.  *See* U.S.C. §§ 2605.

Regardless, Plaintiff has advanced no allegations that demonstrate actual damages caused by any RESPA violations.  *See Madura v. BAC Home Loans Servicing, LP*, 593 Fed. Appx. 834, 843 (11th Cir. 2014) (*per curiam*) (citing 12 U.S.C. § 2605(f)); *see also Frazile v. EMC Mortg. Corp.*, 382 Fed. Appx. 833, 836 (11th Cir. 2010) (*per curiam*) (holding that showing damages caused by the failure to provide notice of transfer is a "necessary element" of a RESPA claim).  "To the extent [Plaintiff] raises the purported RESPA violations as an affirmative defense to foreclosure, [she] ha[s] not demonstrated how a RESPA violation would preclude a foreclosure."[19] *Madura*, 593 Fed. Appx. at 843.

---

[18] Indeed, the address to which payment must be delivered, amount of payment due, and account number remained the same, the payee name did not change, as Shellpoint acquired or merged with Resurgent.  (*See* Doc. # 15-1); *see also Madura v. BAC Home Loans Servicing, LP*, 593 Fed. Appx. 834, 842 (11th Cir. 2014) (*per curiam*) (BAC acquired Countrywide Home Loans, Inc. and was not required to send a notice of service transfer).

[19] Insofar as Plaintiff's RESPA claim may be construed as alleging Defendant failed to provide notice of transfer because it is "the mortgagee and lienholder on the mortgage in question," that claim still fails as a matter of law.  (Doc. # 13).  "RESPA governs the notice requirements where loan servicing is assigned, sold, or transferred, but does not govern notice requirements where a note or mortgage is transferred."  *Newcomb v. Cambridge Home Loans, Inc.*, 861 F. Supp. 2d 1153, 1161 (D. Haw. 2012); *accord Jones v. ABN Ambro Mortg. Grp., Inc.*, 606 F.3d 119, 124-25 (3d Cir. 2010).

For all these reasons, Plaintiff has failed to state a claim under RESPA, and that cause of action is due to be dismissed.

> **2.    Plaintiff's FDCPA Claim Relating to the Notice of Service Transfer Fails as a Matter of Law and Is Not Plausibly Alleged**

Plaintiff has also asserted a FDCPA claim in relation to the service transfer notice, but the court is perplexed by that assertion.  Plaintiff expressly alleges that "[n]o attempts or efforts were made by Shellpoint related to collection of a debt, either by mail or phone."  (Doc. # 13). Moreover, Plaintiff has not alleged that Defendant's notice of service transfer was an attempt to collect a debt (and to be sure, the undisputed facts indicate that it was not such an attempt). Moreover, as stated above, Shellpoint (and Resurgent) is not a debt collector under the FDCPA. *See Warren*, 342 Fed. Appx. at 461.  Additionally, like her RESPA claim, Plaintiff has failed to allege any damages she sustained as a result of Defendant's alleged failure to comply with the FDCPA.  She has not alleged a claim for statutory damages under the FDCPA.  *See* 15 U.S.C. § 1692k(a) (setting forth damages allowed under FDCPA); *see also Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014) (same) (citations omitted).  Plaintiff has failed to state a claim pursuant to the FDCPA.

> **D.    Plaintiff's Fraud Claim is Implausible, Does Not Comply with Rule 9(b), and is Time Barred**

Plaintiff contends that Defendant is liable for fraud because the Note and mortgage were "fake and counterfeit" at the time of origination.  (Doc. # 13).  Specifically, the Amended Complaint states that Empire Equity Group, "who was not licensed to originate mortgages in Alabama," originated the mortgage that was endorsed to TB&W.  (*Id.*).  Thus, Plaintiff asserts that the origination of the Note was a fraud committed against Plaintiff in May 2008, and the mortgage debt is invalid and uncollectable.  (*Id.*).   However, Plaintiff's fraud claim is not

plausibly pled, fails to comply with the Federal Rules of Civil Procedure, and in any event fails as a matter of law.

The Alabama Code defines fraud as "[a]n intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person . . . of property or legal rights or otherwise causing injury." Ala. Code § 6-11-20(b)(1). When proven, fraud allows for an award of punitive damages. *Id.* To establish fraud, Plaintiff must prove the following: (1) a false representation (2) of a material existing fact (3) reasonably relied upon by Plaintiff (4) who suffered damage as a proximate causation of the misrepresentation. *Graveling*, 970 F. Supp. 2d at 1250 (citing *Mantiply v. Mantiply*, 951 So.2d 638, 653 (Ala. 2006) (other citations omitted)). Plaintiff does not demonstrate any false representations by Defendant, particularly with regards to the origination of the mortgage loan in May 2008. (*See* Doc. # 13). And, the basis for Plaintiff's claim of fraudulent origination due to the originator not being licensed to originate mortgages in Alabama is without merit: Alabama law "permit[s] foreign corporations to lend money to residents of Alabama and to take security for such loans in the form of mortgages on real property located within the state, and to enforce such obligations in the courts of Alabama." *Midwest Homes Acceptance Corp. v. Langdon*, 253 So.2d at 30-31. Without pleading any plausible facts, Plaintiff cannot pursue this claim for relief.

Additionally, the Amended Complaint does not comply with Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In other

words, "fraud must be averred with particularity." *Waldrup v. Hartford Life Ins. Co.*, 598 F.

Supp. 2d 1219, 1227 (N.D. Ala. 2008) (citations omitted).

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements
> were made in what documents or oral representations or what omissions were
> made, and (2) the time and place of each such statement and the person
> responsible for making (or, in the case of omissions, not making) same, and (3)
> the content of such statements and the manner in which they misled the plaintiff,
> and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Intl., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue

Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1371 (11th Cir.1997)).  Even accounting for

Plaintiff's *pro se* status, the Amended Complaint does not come close to pleading with

particularity those details, and fails to set forth any alleged fraudulent statements or

misrepresentations.  (*See* Doc. # 13).

Finally, and in any event, Plaintiff's fraud claim is time barred.  "An action alleging fraud

is subject to a two-year statute of limitations."  *Ex parte Am. Gen. Fin., Inc.*, 795 So.2d 685, 689

(Ala. 2000) (citing Ala. Code § 6-2-38(l)).  "'The two-year period does not start to run until the

plaintiff has actual knowledge of facts that would . . . put a reasonable person on notice of the

fraud.'"  *Id.* (quoting *Liberty Natl. Life Ins. Co. v. Parker*, 703 So.2d 307, 308 (Ala. 1997) (citing

Ala. Code § 6-2-3)) (additional citation omitted).  Here, Plaintiff admits that the alleged "fraud

occurred in May 2008," and she did not file her Complaint until December 2014.[20]  (Doc. # 13).

Accordingly, Plaintiff's fraud claim is clearly time-barred.

---

[20] Even if Plaintiff had not so readily admitted when the alleged fraud occurred, her fraud claim would be
due to be dismissed as untimely.  "[T]he Alabama Supreme Court has recognized that, under certain circumstances,
this question [of when a plaintiff should have discovered fraud] may be decided as a matter of law."  *Waldrup*, 598
F. Supp. 2d at 1229 (citations omitted).  "[A] party will be deemed to have 'discovered' a fraud as a matter of law
upon the first of either the actual discovery of the fraud or when the party becomes privy to facts that would provoke
inquiry in a reasonable person that, if followed up, would lead to the discovery of the fraud."  *Jones v. Kassouf &
Co., P.C.*, 949 So.2d 136, 140 (Ala. 2006) (quoting *Dickinson v. Land Developers Constr. Co.*, 882 So.2d 291, 298
(Ala. 2003)).  The Alabama Supreme Court has held that as a "corollary to this rule, . . . fraud is discoverable . . .
when one receives documents that would put one on notice that the fraud reasonably should be discovered."
*Waldrup*, 598 F. Supp. 2d at 1230 (quoting *Ex parte Gen. Fin.*, 795 So.2d at 689-90).  That is, the objective standard

**E.      Plaintiff's Claims for Wantonness and Malice are Impermissibly Vague and Also Time Barred**

The Amended Complaint sets forth rote recitations of the definitions of wantonness and malice.  (Doc. # 13).  Wantonness is tortious "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others."  Ala. Code § 6-11-20(b)(3).  Malice is the "intentional doing of a wrongful act without just cause or excuse, either: (a) with an intent to injure the person or property of another person or entity, or (b) under such circumstances that the law will imply an evil intent."  Ala. Code § 6-11-20(b)(2).  Punitive damages may be awarded for a claim of wantonness or malice.  *Id.*  Plaintiff has pleaded no facts supporting claims for wantonness or malice, and the court disregards her conclusory statements of the legal elements.  (*See* Doc. # 13); *see also Iqbal*, 556 U.S. at 678.  And, the foreclosing of a mortgage does not imply an evil intent.  Thus, on these grounds, Plaintiff's wantonness and malice claims fall far short and are due to be dismissed.

Furthermore, and in any event, under Alabama law, any action for an injury arising from claims of wantonness and malice must be brought within two years of the harmful act.  *See* Ala. Code at § 6-2-38(l); *see also Travis v. Ziter*, 681 So.2d 1348, 1350 n. 1 (Ala. 1996) ("Actions alleging . . . wantonness . . . must be brought within two years after the accrual of the cause of action.").  Plaintiff alleges that the act giving rise to her "emotional harm and mental suffering" was the "fraud" that occurred "in May 2008" (that is, the origination of the mortgage and Note by Empire Equity Group, which "was not licensed to originate mortgages in Alabama").  (Doc. #

---

"imposes a duty to read documents received in connection with a particular transaction," and "a fraud claim accrues upon a plaintiff's 'receipt of a document or contract alerting the plaintiff to the possibility of fraud if the [objective] plaintiff could have read and understood such document and choose to ignore its written terms."  *Id.* (citing *Owens v. Life Ins. Co of Ga.*, 289 F. Supp. 2d 1319, 1326 (M.D. Ala. 2003)) (other citation omitted).  And, to be sure, the exceptions of a plaintiff's illiteracy or the document (*i.e.*, the Note) being ambiguous are not present here, where Plaintiff filed a *pro se* Amended Complaint that she drafted.  *See id.* (citations omitted) (setting forth exceptions).  (Also, the Note is plainly unambiguous).  Plaintiff received the mortgage loan documents in May 2008, and, thus, her fraud claim accrued then.  (*See* Doc. # 13).  She did not file her initial Complaint until over six years later.  (Doc. # 1-2).

13).  However, Plaintiff filed her initial Complaint on December 17, 2014—more than six years later.  (*See* Doc. # 1-2).  Thus, Plaintiff's wantonness and malice claims (and their associated request for punitive damages) are time barred by the statute of limitations.

**VII.    Conclusion**

For all of these reasons, Plaintiff's claims against Shellpoint are due to be dismissed with prejudice. A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** this February 29, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE